IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 19-cv-02398-DDD

BRIDGET SUZETTE SIGLER,

   Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

   Defendant.

---

**ORDER AFFIRMING DECISION OF
ADMINISTRATIVE LAW JUDGE**

---

   Plaintiff Bridget Suzette Sigler brought this action seeking judicial review of a determination by an Administrative Law Judge ("ALJ") that she is not entitled to benefits under the Social Security Act because she was not disabled and was, in fact, able to perform limited light or sedentary work in the national economy. See 42 U.S.C. §§ 405(g). The matter is ripe for review. (*See* Docs. 11, 15, 16, 17.) The ALJ's determinations were supported by substantial evidence. The decision is therefore **AFFIRMED**.

## LEGAL STANDARDS

### A. Entitlement to Disability Insurance Benefits

   To obtain disability insurance benefits under the Act, a claimant must meet the insured status requirements, be younger than 65 years of age, file an application for a period of disability, and have a "disability" within the meaning of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v.*

1

*Sullivan,* 951 F.2d 264, 267 (10th Cir. 1991). The disability must also have begun before expiration of the individual's disability-insured status as that term is defined by the Social Security Administration. 20 C.F.R. § 404.131; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983). A person has a disability

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). To qualify for benefits, the disabling impairment must last—or be expected to last—at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Evaluating the existence of a disability is a five-step, sequential process that ends at any point at which the claimant is found not disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted).

First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. *Id.* at § 404.1520(e). Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she]

2

has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

### B. Standard of Review by a District Court

When reviewing disability insurance benefits denials, district courts decide only whether "substantial evidence" supports the ALJ's factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A district court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). And courts may not substitute their judgment for that of the agency. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Any fact determined by the ALJ, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY
## AND OVERVIEW OF MS. SIGLER'S ARGUMENTS

On September 20, 2016, Ms. Sigler filed a claim for a period of disability, disability insurance benefits, and an application for supplemental social security income. AR at 22. The application and claim were initially denied in February 2017. *Id.* Ms. Sigler then requested a hearing, which occurred on June 7, 2018 before an ALJ. *Id.* After consideration of the evidence, the ALJ denied Ms. Sigler's claim on September 25, 2018. *Id.* The ALJ concluded that Ms. Sigler's impairments did not meet the definition of disability under the Social Security Act and that she is capable of performing light or sedentary work. *Id.* at 22, 25–27. Ms. Sigler appealed the ALJ's ruling the Social Security Administration Appeals Council, which denied review of her case on July 5, 2019 for failure to present new and material evidence. *Id.* at 2. She filed this action to review the decision of the Social Security Commissioner six weeks later under 42 U.S.C. § 405(g). *See* Doc. 1, ¶ 1.

The basis for Ms. Sigler's application for disability benefits are her complaints of severe chest, neck, and back pain; left shoulder pain; fibromyalgia; and weakness in her extremities. These ailments, she argues, render her disabled. The ALJ considered voluminous medical evidence—both Ms. Sigler's statements concerning her symptoms and evidence from medical professionals—and decided that the objective medical evidence demonstrated Ms. Sigler isn't disabled within the meaning of the Social Security Act.

The basis for appeal of the ALJ's determination is Ms. Sigler's argument that the ALJ improperly weighed certain medical evidence in denying benefits.

4

*First*, she says that the ALJ erred when it gave the opinion of Dr. Jospeh Sever, an independent medical consultant who examined Ms. Sever, partial weight. AR at 32. The ALJ assigned great weight to Dr. Sever's conclusion that Ms. Sigler is "able to perform all necessary activities of daily living" because that finding was consistent with Ms. Sigler's testimony that she can bathe and dress herself. *Id.* (citations omitted). But the ALJ assigned little weight to Dr. Sever's opinions that Ms. Sigler is only able to lift ten pounds with her left shoulder and that she is only able to sit or stand two of eight hours in a workday. *Id.* (citations omitted). According to the ALJ, these opinions were inconsistent with medical evidence in the record. *Id.* (citations omitted).

*Second*, Ms. Sigler says the ALJ erred when she assigned the opinion of Dr. Alison Musso, a state psychologist, "great weight." *Id.* at 31. The ALJ reasoned that Dr. Musso's opinion that Ms. Sigler had a "moderate restriction in understanding, remembering, or applying information, no restrictions in interacting with others, a moderate restriction in concentrating, persisting, or maintaining pace, and no restrictions in adapting or managing herself" was consistent with other evidence in the record, including evidence that Ms. Sigler "has some difficulty remembering and completing tasks, but is able to complete basic tasks such as attending doctors' appointments and driving." *Id.* at 31–32 (citations omitted).

*Third*, Ms. Sigler says the ALJ erred when she found that Dr. Jennifer Miller's opinion that Ms. Sigler is unable to work was a legal conclusion reserved to the Commissioner and thus entitled to no weight. *Id.* at 33 (citations omitted).

*Fourth*, Ms. Sigler says the ALJ erred when it found that her subjective complaints about her impairments were not consistent with the weight of the objective medical evidence. AR at 29–31; 34–35.

Ms. Sigler further challenges the ALJ's findings that she is capable of performing light work or, in the alternative, sedentary work. Finally, Ms. Sigler argues that the Appeals Council committed reversible error when it concluded that none of the evidence she submitted to it was new or reasonably likely to change the outcome of the ALJ's ruling.

## DISCUSSION

### I.   Medical Opinions Considered by the ALJ

#### A.  Joseph Sever

Ms. Sigler argues that the ALJ committed reversible error when she gave the opinion of Dr. Joseph Sever partial weight, discounting Dr. Sever's findings that Ms. Sigler was only able to lift ten pounds with her left shoulder and that Ms. Sigler is only able to sit and stand only two hours of an eight-hour day. AR at 32. But the ALJ's decision to give Dr. Sever's opinions partial weight was supported by substantial evidence.

Dr. Sever opined that Ms. Sigler is "currently able to perform all activities of daily living." AR at 745. "She can dress herself, feed herself, ambulate with no assistive devices and drive her own automobile." *Id.* On the other hand, Dr. Sever opined that "due to left shoulder pain," Ms. Sigler can only lift "10 pounds" or less. *Id.* at 751. Dr. Sever also concluded that, based on his evaluation of Ms. Sigler, she "is able to sit six hours of an 8-hour workday but would require position changes approximately every 60 minutes." *Id.*

The ALJ's decision to give this opinion only partial weight was supported by substantial evidence. In partially discounting Dr. Sever's opinion, the ALJ relied on evidence in the record showing that Ms. Sigler had full or near-full strength in her left shoulder, a range of motion "within normal limits," and limited tenderness in her back. AR at 32;

*see also id.* at 660 (notes from Dr. Joshua Scheidler that Ms. Sigler's range of motion was "full without pain but very guarded and cautious movements"); *id.* at 819 (notes from providers at the Colorado Brain and Spine Institute that Ms. Sigler strength was "4/5" and "5/5"); *id.* at 834 (notes from providers at Parker Adventist Hospital stating Ms. Sigler had "no midline cervical thoracic, or lumbar tenderness"); *id.* at 1285 (notes from Colorado Brain and Spine Institute describing Ms. Sigler's strength as "4/5 throughout"). Ms. Sigler says that the decision to discount portions of Dr. Sever's evaluation constitutes improper substitution of the ALJ's judgment for that of a trained medical professional. Doc. 17 at 5. But that's not what happened. The ALJ merely weighed countervailing evidence from Dr. Joshua Scheidler, as well as from providers at Parker Adventist Hospital and the Colorado Brain and Spine Institute against Dr. Sever's opinion as it is required to do. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (ALJ must weigh "all relevant medical evidence."). Likewise, Ms. Sigler cites other portions of the record that support the discounted portions of Dr. Sever's opinion. Doc. 15 at 33–34. But "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. Because the ALJ's assessment of Dr. Sever's opinion was based on substantial evidence, the Court will not overturn the ALJ's decision on this basis.

### B. Dr. Allison Musso

Ms. Sigler argues that the ALJ erred when she gave "great weight" to Dr. Allison Musso's assessment of Ms. Sigler because the ALJ failed to credit the portions of Dr. Musso's opinion that possibly favored a

7

finding that Ms. Sigler is disabled. But this argument misreads the ALJ's opinion.

Dr. Musso opined that Ms. Sigler's abilities to "carry out very short and simple instructions"; to "maintain attention and concentration for extended periods"; to "perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances"; to "sustain an ordinary routine without special supervision"; and "to work in coordination with or in proximity to others without being distracted by them" were "not significantly limited." AR at 359. Dr. Musso also opined that Ms. Sigler's abilities to "carry out detailed instructions" and to complete a "normal workday and weekday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and lengths of rest periods" were "moderately limited." *Id.* The ALJ expressly credited both parts of Dr. Musso's opinion, including that Ms. Sigler has certain moderate limitations on her abilities to complete work tasks: "Dr. Musso's further opinion that the claimant is capable of remembering and carrying out simple instructions (but moderately limited in carrying out detailed instructions), is not significantly limited in her ability to maintain attention and concentration, and that she has no social interaction and adaptation limitations." AR at 31–32 (citing AR at 359). So Ms. Sigler is simply wrong. The ALJ *did* consider and credit Dr. Musso's opinions on the moderate limitations faced by Ms. Sigler.

### C. Dr. Jennifer Miller

Dr. Miller, Ms. Sigler's treating physician, completed a series of forms in January, February, and August 2016 regarding Ms. Sigler's condition. AR at 1214–20. In the January 2016 form, Dr. Miller checked the box for "Yes" in response to a question whether Ms. Sigler was

"unable to perform any of his/her job functions due to the condition," and explained that Ms. Sigler was unable to sit or stand "for >40 min[ute]s continuously." AR at 1215. In the August 2016 form, in response to the same question, Dr. Miller again checked the box for "Yes" and explained that Ms. Sigler is "unable to utilize l[ef]t shoulder/arm for scanning, bagging retail items, unable to tolerate prolonged time in single posture." *Id.* at 1219. Dr. Miller limited her opinion to the time period of January to September 2016. *Id.* at 1219.

The ALJ considered Dr. Miller's opinion but gave it "little weight," because Dr. Miller's opinion about Ms. Sigler's ability to work "is an opinion … reserved for the Commissioner," AR at 33, and because "Dr. Miller specifically limited [her] opinion to the time period of January 15, 2016 to September 30, 2016, and thus the opinion is not currently relevant and does not take into account the claimant's more recent medical records." AR at 33.

The ALJ's decision to give Dr. Miller's opinions little weight was proper. As Ms. Sigler concedes, an evaluating doctor's opinion that a claimant is unable to work is not entitled to any weight from the ALJ under the regulations governing the ALJ's review. *See* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. … A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Ms. Sigler instead argues that the ALJ improperly discounted the remaining portions of Dr. Miller's opinion—that she was unable to sit or stand for more than 40 minutes continuously and that she had difficulty using her left shoulder. But although Dr. Miller was Ms. Sigler's treating physician, Dr. Miller's opinion is entitled to controlling weight only

9

if it "is not inconsistent with the other substantial evidence" in the record. *Id.* § 404.1527(c)(2). As described above, the record here contains substantial evidence that is contrary, at least in part, to Dr. Miller's opinions. The ALJ evaluated that opinion in the light of the more recent and, thus, relevant evidence in the record as she was required to do, *id.* § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Ms. Sigler also argues that the ALJ improperly rejected Dr. Miller's opinions on the basis that they were time-limited. This argument runs counter to regulations governing the ALJ determination—that the ALJ must weigh the medical opinion at issue against the record as a whole and discount opinions inconsistent with that record. The ALJ did not commit reversible error on this basis.

### D. Consistency of Ms. Sigler's Statements

The ALJ found that although Ms. Sigler had "medically determinable impairments" that "could reasonably be expected to cause" the symptoms she had alleged, Ms. Sigler's statements about the intensity and persistence of those symptoms were not "entirely consistent with medical evidence." AR at 29. This finding was supported by substantial evidence.

The ALJ found, for example, that although Ms. Sigler complained of severe back and spine issues, that the "medical imaging in the record shows a consistently mild state" of her "degenerative disc disease and osteoarthritis." *Id.* (citing AR 820, 1008 (imaging of Ms. Sigler's spine showing only "mild" degenerative changes)). Similarly, the ALJ found that, although Ms. Sigler stated that she had substantial hip pain, record evidence from November 2017 showed that she had "a normal bony

10

pelvis, normal sacroiliac joints, and a normal symphysis." *Id.* (citing AR at 1000). As for Ms. Sigler's complained-of left-shoulder condition, the ALJ found it had "little support in the objective evidence of record," citing imaging evidence moderate damage to her shoulder, at most. *Id.* (citing AR at 649, 1015, 1500). Other record evidence relied on by the ALJ showed that Ms. Sigler had a normal range of motion and good strength in her left shoulder. *Id.* (citing AR at 660, 1285). And even though the ALJ found that Ms. Sigler had fibromyalgia, record evidence showed that it was under control through medication. *Id.* (citing AR at 1456). Finally, the ALJ found that Ms. Sigler's "depression, anxiety, and somatic disorder are well-managed with medication and therapy," citing record evidence to that effect. *Id.* at 30 (citing 1305, 1328, 1406, 1422, 1428, 1615).

Ms. Sigler argues that the ALJ "cherry-picked 'normal' findings and omitted significant qualifying statements" regarding that evidence. Doc. 15 at 42. There are, to be sure, "qualifying statements" and contradictory evidence in the record to support her position, Doc. 15 at 42–45, but none of it is so overwhelming to render the ALJ's decision reversible. For example, Ms. Sigler says the ALJ improperly discounted the fact that she has suffered "effacement of the ventral cerebro-spinal fluid space," but the record evidence she cites for this proposition notes that the degeneration is "mild." Doc. 15 at 43 (citing AR 703–04). She likewise cites record evidence for the proposition that the findings on her lumbar spine "were abnormal." Doc. 15 at 43. But the record evidence she cites notes that those abnormalities were "minimal" and "mild." AR at 1012.[1] At

---

[1] The other allegedly contradictory evidence cited by Ms. Sigler follows the same pattern. The evidence she relies on to say her left-shoulder injury is worse than noted by the ALJ in actuality says that she has "5/5" strength in her left shoulder. AR at 648. The evidence she cites regarding her fibromyalgia actually says that it was "resolving on Lyrica." *Id.*

11

most, the evidence relied on by Ms. Sigler is contradictory to the evidence relied on by the ALJ. But as explained, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. The ALJ's ruling is not subject to reversal on this basis.

## II. Jobs in the National Economy

At step five of the evaluative process, the ALJ found that Ms. Sigler was not disabled because she was capable of performing "light work," including occupations as a cashier, merchandise marker, and collator operator. AR at 34. In the alternative, the ALJ found that, even if Ms. Sigler were not capable of performing light work, she could still perform a range of "sedentary work," including as a "document preparer, call out operator, and address clerk." *Id.* at 35. The ALJ determined that these occupations were available in "significant numbers in the national economy." *Id.*

Ms. Sigler challenges these findings on two bases. She argues that substantial evidence does not support the ALJ's conclusion that she is capable of light work, and that the occupations listed by the ALJ for sedentary work aren't available in large quantities in the national economy. Neither is correct. First, as explained above, the ALJ's opinion that she is capable of light work is supported by substantial evidence, including the evidence cited above from Dr. Scheidler, the Colorado Brain and

---

at 1376. And the medical assessment she cites for the proposition that her mental health prevents her from working, actually says that her "affect and interaction [were] appropriate to content of interview." *Id.* at 1379.

12

Spine Institute, and the providers Ms. Sigler saw at Parker Adventist Hospital.

Second, even if there weren't substantial evidence to support the ALJ's light-work conclusion, there is substantial evidence to support the availability of at least one of the sedentary jobs cited by the ALJ: address clerk. The ALJ relied on the testimony of a vocation expert that more than 15,000 address-clerk jobs are available in the national economy, and that this figure is consistent with the Dictionary of Occupational Titles. AR at 82. Vocational expert testimony and the Dictionary of Occupational titles are recognized as reliable sources of vocational information by agency regulations. *See* 20 C.F.R. § 404.1566(d) (taking administrative notice of reliable job information in sources including the DOT), (e) (ALJ may use vocational expert testimony to resolve complex vocational issues); *see also Social Security Ruling 00-4p*, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT … [and] its companion publication, the SCO … for information about the requirements of work in the national economy."). Ms. Sigler argues that the ALJ's decision is reversible because it failed to consider a Social Security Administration "Occupational and Medical-Vocational Claims Review Study," which says that the occupation of address clerk is no longer available in large numbers in the national economy. *See* Mark Trapani and Deborah Harkin, *Occupational and Medical-Vocational Claims Review Study* 7 (May 2011) ("It is doubtful that [the job of address clerk], as described in the DOT, currently exist in significant numbers in our economy"), *available at* https://www.ssa.gov/oidap/Documents/PRESENTATION--TRAPANI%20AND%20HARKIN--OIDAP%2005-04-11.pdf. It is certainly possible that this study contains accurate information, but the ALJ was under no obligation to take administrative notice of it, whereas the ALJ

13

did rely on the DOT and testimony of a vocational expert, both of which are considered reliable sources by governing regulations. 20 C.F.R. § 404.1566(d), (e). And in any event, this conflicting evidence doesn't so "overwhelm" the evidence relied on by the ALJ to reverse her decision. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("Evidence is not substantial 'if it is overwhelmed by other evidence … or if it really constitutes not evidence but mere conclusion.'"). The conflicting evidence on this issue requires affirming the ALJ's conclusion.

### III. New Evidence Submitted to the Appeals Council

Ms. Sigler filed an appeal of the ALJ's decision with Social Security Administration Appeals Council, which the Appeals Council denied. With her appeal, Ms. Sigler submitted new medical evidence that she says supports her claim. The Appeals Council rejected this new evidence on the grounds that it post-dated the September 25, 2018 decision of the ALJ, and that the new evidence wouldn't have changed the ALJ's decision in any event. AR at 2.

The decision of the Appeals Council was proper. The Appeals Council is only required to consider new evidence submitted by a claimant if that evidence pre-dates the decision of the ALJ. 20 C.F.R. § 404.970(a)(5) (explaining that "the Appeals Council will review a case" only if, among other things, the claimant submits evidence "that is new, material, and relates to the period on or before the date of the hearing decision."); *Tollett v. Barnhart*, 60 F. App'x 263, 265 (10th Cir. 2003) (declining to consider medical records rejected by the Appeals Council that post-dated an ALJ's decision); *Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004) (test results from examination after the ALJ issued its decision are not a proper basis for appeal under § 404.970(a)(5)). Nearly all of the evidence that Ms. Sigler says the Appeals Council should've considered

14

was from examinations or tests that occurred after September 25, 2018, the date of the ALJ's decision. *See* Doc. 15 at 46 (citing AR at 15 (evidence from February 2019); *id.* at 177 (evidence dated January 24, 2019); *id.* at 215–16 (evidence dated April 2, 2019); *id.* at 343–44 (evidence dated November 1, 2018); *id.* at 324–27 (evidence dated October 31, 2018); and *id.* at 314–21 (evidence dated October 6, 2018). All of this evidence was properly rejected by the Appeals Council as a result.

Indeed, before this Court, Ms. Sigler cites only one piece of evidence she submitted to the Appeals Council that predated the ALJ's decision: comments from a medical examination dated August 20, 2018 that her "shaking [had] worsened." *See* Doc. 15 at 47 (citing AR at 332). The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." AR at 2. This wasn't error. The Appeals Council may review a case only if "there is a reasonable probability that [the new, timely evidence submitted by the claimant] would change the outcome of the [ALJ's] decision." 20 C.F.R. § 404.970(a)(5). And the record before the ALJ contained numerous denials by Ms. Sigler that she wasn't experiencing tremors. *See, e.g.*, AR at 914 (noting that Ms. Sigler "denies … [having] tremors"); *id.* at 921 (same); *id.* at 929 (same); *id.* at 943 (same); *id.* at 965. The Appeals Council was thus right that the new evidence produced by Ms. Sigler has a reasonably probability to change the ALJ's decision given the overwhelming evidence to the contrary in the record. The Court won't remand the case on this basis.

## CONCLUSION

For the following reasons, the decision of the ALJ is **AFFIRMED**.

DATED: June 11, 2020.     BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

16